**HEYMAN et al. v. COMMISSIONER OF INTERNAL REVENUE.**

**HEYMAN v. COMMISSIONER OF INTERNAL REVENUE.**

Nos. 88, 89, Docket 20943, 20944.

United States Court of Appeals Second Circuit.

Argued April 6, 1949.

Decided August 2, 1949.

Boyle, Feller, Stone & McGivern, New York City (Thomas F. Boyle, Charles S. Whitman, Jr., Henry C. Moses, Jr., New York City, of counsel), for petitioners.

Theron Lamar Caudle, Asst. Atty. Gen., Ellis N. Slack, S. Dee Hanson, Sp. Assts. to the Atty. Gen., for respondent.

Before CHASE, CLARK and FRANK, Circuit Judges.

CHASE, Circuit Judge.

The Commissioner determined a deficiency in the income taxes of William Heyman and of his wife Lydia Vogel Heyman,

who filed a joint return for 1938, and in the income taxes of Lydia Vogel Heyman computed on her return for 1939 and fraud penalties for each year were imposed. The returns were filed with the Collector of Internal Revenue for the Second District of New York and the issues here presented are closely related to those involving other taxpayers, all of which were heard and decided together in the Tax Court. These two petitions, however, have been brought on for hearing before those of other taxpayers concerned. They were consolidated for argument together and are so alike as to the decisive questions that we will, for convenience, call Mrs. Heyman the 'petitioner though we recognize her husband's interest in the deficiency redetermined on the joint return and in the fraud penalty.

The basic issues are the amount of the petitioner's taxable share of the net proceeds of a claim against the City of New York of a corporation some of whose stock she owned, and whether it is taxable as ordinary income in the taxable years or only as a long term capital gain in each such year.

These questions grew out of the following facts and circumstances:

The petitioner, at all critical times, owned one third of the capital stock of Mideastern Contracting Corporation, a Delaware Corporation, to be called hereinafter Mideastern, which was organized in 1927 to enter into a contract with the City of New York to build a subway. It did make the contract and built the subway which was substantially completed by 1931, and did no other business. It was dissolved pursuant to a resolution of its directors, and a certificate of dissolution issued by the Secretary of State of Delaware on October 18, 1933, and continued to exist thereafter only for the limited purposes of winding up its affairs as provided by Section 42 of the Delaware General Corporation Law. It had in 1931 filed a claim against the City of New York for extra work done and materials furnished in constructing the subway and after that claim had been disallowed a suit was, on May 21, 1932, brought by the corporation against the City on the claim. The corporation obtained a judgment for $784,064.54 which was entered on January 7, 1938, after trial by jury in that suit. Thereafter such negotiations were had that the City on April 22, 1938, paid the attorneys for the corporation, the sum of $66,290.59 in partial settlement of that judgment, and part of the net proceeds was received by petitioner in that year. It was reported as a long term capital gain.

In 1939 the City agreed with the attorneys for the corporation upon a settlement of the remainder of the judgment and paid them an additional sum of $620,000.00 in full discharge of it. The petitioner received part of the net proceeds of this further payment and reported it in 1939 as a long term capital gain.

Neither of these receipts so reported equalled the one third of the net proceeds which would have been proportionate to petitioner's stock interest but only one ninth, as the petitioner had, as later more fully appears, some years previously attempted to assign one third of her rights to her husband and one third to her son— to each of whom, consequently, was paid an amount equal to her actual receipts. The payments to both of them have been added to her taxable income in the respective years and the deficiencies determined by taxing all as her income at full rates.

Meanwhile the following things had been done which are in part relied on by the petitioner as the legal justification for reporting the two receipts for taxation as she did.

In 1931 such changes were made in the capital structure of Mideastern that on July 20 in that year its common stock had been reduced to 3000 shares having no par value and its preferred stock had been retired for cash. On July 30, 1931 these new shares were owned, one third each by the petitioner, by Rose Goodman and by James E. Gibbons. In September of that year $551,615.01 was distributed out of paid-in surplus to these stockholders and on March 2, 1932 an additional $3,500 was distributed to them leaving the paid-in surplus of the corporation thereafter, as reported in its income tax returns from

1933 to 1937, inclusive, at $29,384.99. On October 21, 1931, James E. Gibbons assigned to the petitioner and Rose Goodman, jointly, all his rights to receive dividends and distributions thereafter on his Mideastern stock but to the extent of $68,200 only, in which amount he was acknowledged to be indebted to them for loans used to acquire the stock. The assignment provided that Gibbons should not be personally liable for any part of the loans not so paid.

On January 17, 1935, the petitioner, Charles Goodman and James E. Gibbons executed an instrument which Mideastern signed by James E. Gibbons, Pres., in which it was recited that the corporation had been indebted to them as its creditors in the sum of $29,384.99 from March 2, 1932 to the date of the instrument; that it was unable to pay the debt; that it was the owner of a claim filed against the City of New York for extra work done and materials furnished on which suit had been brought; and that the corporation was without funds to pay for the preparation of that suit for trial. It was therefore agreed that the "creditors" would waive all further interest on the "indebtedness" and would wait for payment until the corporation was financially able to pay them. In consideration for such promises the corporation assigned to such "creditors and/or their assignees all its right, title and interest in and to all claims now owned by it against the City of New York." It also agreed to prosecute its said claim for the benefit of the "creditors and/or their assignees, subject however to payment by the creditors of all further expenses of such litigation." And the corporation agreed that designated individuals, who were the three stockholders, their spouses, and their children, were the owners of the claim in shares then stated without giving effect to Gibbons' previous assignment.

On October 28, 1937, Charles Goodman, James E. Gibbons and William Heyman, purporting to act as individuals and as trustees for their respective wives and children, executed an instrument in which they acknowledged the receipt of all the assets of Mideastern, subject to its therein stated liabilities, and in which the net proceeds were transferred in trust to Charles Goodman for distribution to the same persons entitled to share in the proceeds of the claim under the instrument executed on January 17, 1935, but with recognition now given, however, to the rights of the petitioner and of Rose Goodman to distribution from the share of Gibbons in accordance with the terms of the agreement executed on October 21, 1931. The claim against the City was not among the assets listed. Distribution of the proceeds of the claim however was made, as to shares at least, in accordance with the provisions of this 1937 agreement.

The petitioner now takes a twofold position. It is first that under the instrument executed on January 17, 1935, which is now alleged to have been a liquidating distribution, she both became the assignee of property and was divested of property to the extent that her husband and son then took as her assignees so that the amount on which she is taxable is only one third of what it would otherwise have been, and, second, which is in the alternative, that if the 1935 assignment was invalid she is taxable upon her share of the net assets of Mideastern distributed in each taxable year only as upon long term capital gains because they were dividends in complete liquidation of the corporation. Section 115(c) of the Revenue Act of 1938, 26 U.S.C.A. Int.Rev.Acts, page 1056.[1]

We think the Tax Court's redetermination of the deficiency for each year was right. When Mideastern was dissolved the petitioner became entitled to receive one third of the liquidating dividends by virtue of her ownership of one third of

---

[1] In her petition for review of the Tax Court's determination petitioner argued that the instrument of January 17, 1935, embodied an assignment to her for consideration. She has now abandoned this position and asserts that it was a distribution in partial liquidation. She also argued that the payments in 1938 and 1939 were the proceeds of the sale of the claim as a capital asset acquired by her in 1935. She had also abandoned this position on this appeal.

its stock. The agreement of January, 1935, under which the corporation undertook to assign its rights in the claim against the City of New York to its stockholders as "creditors" and, by merely listing members of their families as owners of designated shares in the proceeds of the claim, to affect a division of the claim among the families appears to be merely a transparent subterfuge to evade taxation. The stockholders were not creditors of the corporation and they had in 1935 only the right to receive their proportionate share of whatever might be the corporation's remaining assets after its actual creditors were paid. The $29,384.29 was not a loan as stated but the remainder of the paid-in surplus not distributed after the changes in the capital structure were made.

In so far as the instrument purported to assign anything to the petitioner it was without consideration and, of course, that is so equally in so far as it purported to transfer any interest in the claim to her husband or her son, for there was not even the pretense of any consideration moving from them. Aside from that, it is, moreover, apparent that she had before the 1935 instrument was executed, by virtue of her stock ownership in the corporation, exactly the same proportionate interest in the proceeds of the claim that that instrument purported to transfer to her and to her assignees. The Tax Court disregarded the purported assignments as sham. The government argues that they operated at most as an anticipatory assignment of possible future liquidating dividends, but we shall assume, arguendo, despite any legally justifiable doubts, that the 1935 instrument transferred the shares in the claim to the petitioner and to her husband and her son which the petitioner now claims it did and look to the tax consequences of the resulting division of the payments in 1938 and 1939 upon that assumption.

■ In these circumstances the petitioner relies on Blair v. Commissioner, 300 U.S. 5, 57 S.Ct. 330, 81 L.Ed. 465, and cases which apply the principle there given effect that a transfer of property which is itself the source of income is not the transfer of the future income which will flow from that source. The situation here, however, is quite different. The claim in 1935 was not property capable of being identified other than as the basis of a pending lawsuit brought by the corporation. The gratuitous transfer of shares was in effect but the transfer of rights to receive the proceeds of that litigation, if and when there were any. Only the proceeds could become income-producing property of the assignees. The claim itself was, in so far as tax consequences were created by its transfer, in the same category with the claim transferred in Doyle v. Commissioner, 4 Cir., 147 F.2d 769. There is a difference between the two in that in the Doyle case the amount of the claim was more clearly established, but that is not a distinguishing feature since here there was no bargaining or question of value but only the gratuitous transfer of whatever might prove to be the designated fractions of the claim. Here, as there, no present transfer of a capital asset occurred which can be recognized for tax purposes but only the transfer of a right to participate in the future in a division of the proceeds of a lawsuit which continued to be carried in the name of the corporation by the same persons as before. Despite the formal dealing with a chose in action, therefore, as a transfer from her to her husband and son, the assignment was but an anticipatory assignment of part of her future income which relieved her of no tax liability. Lucas v. Earl, 281 U.S. 111, 50 S.Ct. 741, 74 L.Ed. 731; Burnet v. Leininger, 285 U.S. 136, 52 S.Ct. 345, 76 L.Ed. 665; Helvering v. Horst, 311 U.S. 112, 61 S.Ct. 144, 85 L.Ed. 75, 131 A.L.R. 655; Helvering v. Eubank, 311 U.S. 122, 61 S.Ct. 149, 85 L.Ed. 81; Harrison v. Schaffner, 312 U.S. 579, 61 S.Ct. 759, 85 L.Ed. 1055; Hyman v. Nunan, 2 Cir., 143 F.2d 425. As a transfer to the petitioner, the 1935 instrument gave her no new property rights and made no change in the relations of the parties or in the conduct of the litigation on the claim; consequently it had no perceivably legitimate business purpose which could create tax consequences. Cf. Commissioner v. Court Holding Co., 324 U.S. 331, 65 S.Ct. 707, 89 L.Ed. 981; Higgins v. Smith, 308

U.S. 473, 60 S.Ct. 88, 84 L.Ed. 452; Gregory v. Helvering, 293 U.S. 465, 55 S.Ct. 268, 79 L.Ed. 596, 97 A.L.R. 1355; Brown v. Commissioner, 2 Cir., 115 F.2d 337. If it is considered, therefore, that rights to future liquidating dividends, rather than shares in the claim, were in fact assigned, the same result follows a fortiori.

If the 1935 assignment was effective as a distribution in partial liquidation in 1935, there can be no question but that the payments received in 1938 and 1939 were properly held taxable as ordinary income. But, assuming the liquidation to have taken place in 1937, whether the petitioner is entitled to relief on the alternative ground relied on depends, of course, upon whether the amounts she and her husband and son received in 1938 and 1939 were distributed in complete liquidation of the corporation in full payment in exchange for her stock to make Section 115(c), supra, applicable. Since, following the formal dissolution of the corporation in 1933, its assets were distributed in somewhat piecemeal fashion over a period of years, it is essential in order to make the distributions in 1938 and 1939 "amounts distributed in complete liquidation" within the meaning of that term in the above statute that they shall have been part "of a series of distributions made by a corporation in complete cancellation and redemption of all its stock in accordance with a bona fide plan of liquidation and under which the liquidation was to have been completed in a time specified in the plan" which did not exceed three or two years depending upon whether the first distribution was made before or after the end of the taxable calendar year 1937.

The Tax Court held that these amounts were not distributions in complete liquidation within the meaning of the statute and we think that is right. The resolution of the directors which initiated the dissolution in 1933 was not, and was not followed by, anything which can be taken as a bona fide plan of liquidation. The nearest approach to one is the agreement of 1937 and on that the petitioner relies. It is argued that it was such a plan as the statute requires because three individuals acting for

themselves and as trustees for the stockholders and their assignees acknowleged the receipt on that date of all the assets of the corporation, and appointed one of their number to take title to them as trustee "with power to convert them into cash and pay all such liabilities, after which to distribute the balance" to designated persons in designated fractions. We need not. stop to point out everything which is lacking to make this the bona fide plan of distribution the statute requires as a prerequisite to treating distributions in installments as distributions in complete liquidation. It is obvious that it was not intended to be one as to the claim for it was a step in the splitting up of the assets following the attempt in 1935 to assign the claim in such a way that it would thereafter be no part of the assets of the corporation. And it is equally obvious that it did not conform to the requirements of the statute. It came into existence many years after the corporation was dissolved and after some distributions in partial liquidation had been made. It was in reality no plan of complete liquidation at all but merely an agreement by persons who had control of the remnants of the corporate assets concerning the way they should dispose of them. And, moreover, there was no such time limit as the statute made an essential part of a plan of complete liquidation. The only time fixed for distribution was that it should be after all the liabilities of the company were paid and that they should be paid as soon as possible. Thus it is apparent that substantial compliance with the statute was lacking and that the Tax Court correctly recognized that.

As to the fraud penalties the burden was on the Commissioner and the decisive question is whether the fraud findings are supported by substantial evidence. It is clear that there was an understatement of taxable income in each year and whether that was done with intent to defraud was a question of fact for the Tax Court whose decision controls if there was adequate evidential support for it. Helvering v. Kehoe, 309 U.S. 277, 60 S.Ct. 549, 84 L.Ed. 751; National City Bank of New

394

York v. Helvering, 2 Cir., 98 F.2d 93. The agreements above mentioned were given careful consideration by the Tax Court in the light of the circumstances surrounding their execution and it was found. "from all the evidence that the primary object of the instruments was to provide a basis for showing ownership of the claim in members of the respective families, rather than in the stockholders, for the purpose of reporting income for taxation" and that this was done with the knowledge of the petitioners with fraudulent intent to evade taxes. We think the situation as a whole was shown to have been instinct with fraud and that the finding of the Tax Court, far from being erroneous, was plainly right.

Affirmed.