BRYAN et ux.
v.
COMMISSIONER OF INTERNAL
REVENUE.

BRYAN
v.
COMMISSIONER OF INTERNAL
REVENUE.
No. 14385.

United States Court of Appeals,
Fifth Circuit.
Jan. 29, 1954.

Rehearing Denied March 5, 1954.

C. J. Batter, Washington, D. C., for petitioner.

Fred E. Youngman, Ellis N. Slack, Special Assts. to Atty. Gen., H. Brian Holland, Charles S. Lyon, Asst. Attys. Gen., Charles W. Davis, Chief Counsel, Bureau of Internal Revenue, Rollin H. Transue, Sp. Atty., Bureau of Internal Revenue, Washington, D. C., for respondent.

Before HUTCHESON, Chief Judge, and BORAH and RUSSELL, Circuit Judges.

RUSSELL, Circuit Judge.

For each of the years 1935–1944, inclusive, J. Baker Bryan filed his individual [1] income tax returns with the Collector of Internal Revenue for the District of Florida, and reported his income on the cash receipts and disbursements basis. With the exception of the return for 1943, which was not filed until April, 1945, each of the returns was filed timely and all of the reported tax was paid. In October, 1945, a deputy collector of Internal Revenue, Marquis, was assigned to investigate taxpayer's returns. As a result of a joint investigation conducted by Marquis and another agent, jeopardy assessments of taxes, penalties and interest covering each of the years 1935–1944 were made on July 15, 1948, by the Commissioner against the taxpayer.[2] The Tax Court, upon petition for redetermination filed by the taxpayer, sustained the Commissioner in all material respects, but held that there were no deficiencies or penalties for the years 1935, 1936 and 1940, as conceded by the Commissioner at the trial. The deficiencies and civil fraud penalties asserted for each of the other seven years, as redetermined, were sustained, as was the delinquency penalty of 25% for the year 1943. On this petition for review, taxpayer, while not admitting the correctness of the decision of the Tax Court with regard to the years 1937, 1938 and 1939, seeks a review of the decision only insofar as it relates to the taxable years subsequent to 1940.

---

1. For the taxable year 1944 Bryan and his wife, Mary Evelyn Bryan, filed a joint income tax return, however, for present purposes, Bryan will be referred to as taxpayer.

2. Prior to that time taxpayer had been indicted in four counts for income tax evasion for each of the years 1941, 1942, 1943 and 1944. He was convicted on counts 3 and 4, covering the years 1943 and 1944, and on appeal to this court the cause was reversed and remanded for a new trial as to those two counts. Bryan v. United States, 5 Cir., 175 F.2d 223.

As a general rule, the income taxes imposed by Chapter 1 of the Internal Revenue Code, 26 U.S.C.A. § 1 et seq., must be assessed within three years after the required return is filed,[3] however, in case a fraudulent return is filed with intent to evade the tax, the tax may be assessed at any time.[4] Where any part of a deficiency in tax is due to fraud with intent to evade tax, not only may the tax be assessed at any time, but the Commissioner has the authority and the duty to collect as an addition to the tax a civil fraud penalty in an amount equal to fifty per centum of the total deficiency.[5] While ordinarily a determination of tax liability made by the Commissioner is presumptively correct and the burden rests upon the taxpayer to prove it erroneous, in any proceeding involving the issue of fraud with intent to evade tax, the burden of proof with respect to the issue of fraud is upon the Commissioner.[6] Thus in any case where a deficiency in tax is determined by the Commissioner after the three year period of limitation has expired and the civil fraud penalty is asserted, the burden is upon the Commissioner, in an appropriate proceeding where the validity of an assessment based upon such determination is contested, to establish by clear and convincing proof the existence of fraud. This, however, does not shift the burden of overcoming the presumptive correctness of the Commissioner's determination of deficiency from the taxpayer.[7] When the Commissioner establishes that the returns were fraudulent and were filed with intent to evade tax, he has discharged the burden of proof imposed upon him by Section 1112, supra, and thereby the bar of the three year period of limitation is avoided. Thereafter, if the taxpayer is to escape the deficiency and the imposition of the civil fraud penalty, he must go forward with the proof and show that the determination of deficiency is erroneous. Since we are of this view, we reject the contention of the taxpayer that the Tax Court erred in holding that "once fraud is established, the statute of limitations does not apply and the petitioner must disprove the deficiencies."

It was not disputed that a return for each of the four years here involved was filed and that the three year period of limitation had expired as to each return prior to the time the jeopardy assessments were made. Upon making this proof the taxpayer rested his case-in-chief. Counsel for the Commissioner then acknowledged that "the burden is on us to show fraud in order that the Commissioner's determination may stand." The primary question presented by this petition to review is whether the finding of the Tax Court that the Commissioner discharged that burden is clearly erroneous.

In determining the deficiencies and in asserting the fraud penalties the Commissioner relied upon an understatement of gross income for each of the years and not upon an overstatement of business expense.[8] To sustain these deficiencies and the assertion of the

---

3. 26 U.S.C.A., § 275(a).

4. 26 U.S.C.A., § 276(a).

5. 26 U.S.C.A., § 293(b).

6. 26 U.S.C.A., § 1112.

7. Harris v. Commissioner, 4 Cir., 174 F. 2d 70; Cohen v. Commissioner, 10 Cir., 176 F.2d 394. Cf. Snell Isle, Inc., v. Commissioner, 5 Cir., 90 F.2d 481.

8. A stipulation to this effect was entered into prior to trial and the Commissioner was thereby precluded from showing that the taxpayer fraudulently overstated his business expenses on his returns, but was limited to proof that gross income was understated. The taxpayer urges that since an overstatement of business expenses would have the effect of increasing net worth to the same extent that an understatement of gross income would have, the reliance of the Commissioner upon the increase in net worth and expenditures method of reconstructing taxable income is misplaced because it does not take into consideration the possibility that the increase in net worth was derived from unallowable deductions from gross income claimed on the returns. As we understand the stipulation, it is mere-

fraud penalty, the Commissioner introduced evidence showing that the taxpayer had increases in net worth and made expenditures for personal expenses far in excess of the amount of income reported on the returns for each of the years under review. It is contended that the Commissioner was not warranted in resorting to the net worth method of proving taxable income because the evidence does not show that the method of accounting employed by the taxpayer did not clearly reflect his income. The record does not sustain this contention. Although the taxpayer did have cash receipts and disbursement journals and certain other records covering some of the sources from which his income was derived, he had no records whatsoever covering other sources of income which were shown on his returns and from which he reported substantial amounts of income. This fact alone is sufficient to demonstrate that his records did not clearly reflect his income and to sustain the finding of the Tax Court that his records were incomplete and that all of his financial interests were not reflected by his books.

█ Taxpayer also contends that the testimony of the two agents who testified on behalf of the Commissioner was inadmissible because they did not have personal knowledge of the facts testified to by them, in that their knowledge was acquired through the work and investigations of another, or others, who were not under their control and supervision. The evidence shows that Marquis worked jointly with another agent, who was not an employee of the Bureau at the time of the trial and who was not offered as a witness, in accumulating and compiling the data upon which the assessments were based. Both he and a third agent, Swain, testified as to certain items included on the net worth statements which were discovered as a result of their individual and the joint investigations. However, the findings of the Tax Court with regard to net worth were based upon a stipulation of the parties entered into before the trial, the testimony of Marquis concerning the taxpayer's expenditures for living expenses and the testimony of Swain as to certain items disclosed by his personal investigation. It is true that Swain attempted to corroborate Marquis' testimony as to the expenditures for living expenses and the Tax Court apparently accepted his testimony as to estimated personal expenditures for 1944, but since this figure was less than that estimated by Marquis, the taxpayer was benefited by his testimony in this respect and, therefore, has no cause to complain of it.

█ It is strenuously urged that the net worth method of computing income, as applied in this case, was recklessly resorted to; that it does not clearly reflect income; that it is unreliable, untrustworthy and lacking in probative value, and that the evidence is insufficient to show that all of the assets owned by the taxpayer at the beginning and at the end of each taxable year were included in the net worth statement as found by the Tax Court. We share taxpayer's lack of enthusiasm for the net worth method of reconstructing taxable income. At best, it is subject to the criticism that when heedlessly resorted to and loosely applied it is dangerous and inexorable. In all cases, civil and criminal, it should be applied with the utmost caution to avoid injustices to honest taxpayers which might otherwise result. This, however, does not incapacitate it as an instrument of evidential value in cases where it may properly be applied. Demetree v. United

ly a concession by the Commissioner that all such deductions claimed on the returns were allowable, insofar as this proceeding is concerned. The record is devoid of any evidence which even remotely infers that deductions were claimed on the returns that were not allowable or which, directly or indirectly, increased the taxpayer's net worth. In the absence of such evidence, neither the Tax Court nor this Court would be justified in gratuitously assuming that the taxpayer deducted from gross income unallowable expenses on the returns which he filed.

States, 5 Cir., 207 F.2d 892. When a taxpayer violates the mandate of the statute which requires him to keep proper records of his income [9] and conditions are otherwise such that his taxable income may be determined in retrospect only by resort to circumstantial evidence of this character, he will not be permitted to rely upon his ability to conceal the detailed facts of his income and his fraudulent conduct to avoid the imposition of taxes which the collecting authorities may show to be lawfully due.

The basis of the contention made by the taxpayer that the beginning and ending net worth for each of the years was not clearly established is twofold. First, he relies upon the failure of the agents to swear that he had no assets other than those listed on the net worth statement. Secondly, he urges that the Tax Court erred in not crediting rebuttal testimony to the effect that he owned large sums of undeposited cash at various times prior to, and during, the taxable years. Considering the latter contention first, we observe that it was within the province of the Tax Court, as trier of the facts, to reject the testimony of the taxpayer's witnesses with respect to his large cash reserves. Although he may have had cash money at various times during the prohibition era which was used in his illicit pursuits, this would not require a finding that he retained the money or that he did not invest it in other assets which were shown on the net worth statement. The business of illegally importing alcoholic beverages, which the taxpayer was admittedly engaged in during the prohibition era, involved many risks. As testified to by one of his witnesses, it was thought that several of the taxpayer's boats carrying cargoes of liquor were seized at various times by federal agents. Obviously, such seizures resulted in substantial losses to the taxpayer. The testimony of the taxpayer's wife that he kept $180,000 or less in a safe at his home from the time of their marriage in 1926 until the balance of it, about $150,000 to $160,000, was placed in a safety deposit box in 1940, was rejected by the Tax Court as being untrustworthy. We are not prepared to hold as a matter of law that this testimony should have been credited. This is particularly so in view of the fact that during the period he claimed to have had such large sums of cash the taxpayer was making purchases of equipment on the installment plan, one of which purchases was repossessed. Also, during that period he was paying $50 a month toward the purchase of a house, which amount included comparatively large interest payments. Such transactions are not consistent with the possession of sizeable amounts of cash. The record shows that the taxpayer, prior to 1911, operated a gambling club and slot machines, rented two houses to persons who used them as houses of prostitution and sold whiskey illegally at wholesale and retail. During the prohibition era, he engaged in what is commonly referred to as "rum running" in violation of the Eighteenth Amendment. Before the Tax Court he urged that "Bootleggers, rum runners, etc., always had the title to their cars, buildings, etc. so clouded that seizure was ineffective * * *. The training of the years is not easily set aside." We are not impressed with this argument.

The net worth statement included all of the assets owned by the taxpayer that the agents were able to find, but they were unwilling to swear that he did not own other assets that were unaccounted for in their report. This is to say that if there were other assets which should have appeared on the statement they were not found by the agents. The only suggestion that there were other assets which would have any effect upon the annual increases in net worth was the claim of the existence of the large sums of undeposited cash. The possibility of the existence of other assets is ever present; however, it was

9. 26 U.S.C.A., § 54(a).

not necessary for the Commissioner to prove beyond a reasonable doubt that there were no other assets. As a practical matter it is impossible in a case such as this for the Commissioner to prove as a verity that all of the taxpayer's assets have been discovered. We think that the finding of the Tax Court that the taxpayer had no assets of appreciable value other than those listed in its findings of fact is supported by the preponderance of the evidence.

To sustain the finding of the Tax Court that some part of the deficiency for each of the years under review was due to fraud with intent to evade tax, the Commissioner relies upon the fact that for over a period of eight years with the exception of one year during which it is conceded that there was no understatement of income, the taxpayer understated his income by substantial amounts and that for 1941 and 1942 he reported less than one-third of his actual income and for 1943 and 1944 he reported less than one-tenth of his actual income. As a general rule, the mere failure to report income, considered alone, is insufficient to establish fraudulent intent. However, each case must be considered in the light of its own particular facts. Thus considering the present case, we do not hesitate to affirm the finding of the Tax Court. The taxpayer maintained partial records of his income from one or more of his enterprises, but at the same time he maintained no records at all of other sources of income. This method of bookkeeping is designed to conceal the true facts concerning taxable income. For a period extending over eight years he habitually reported only a portion of his income and, during the years under review, only a small fraction of such income. This course of conduct on the part of the taxpayer over such an extended period of time warrants the finding that the false returns were filed with the intent to evade tax.

 The contention that the Tax Court erred in sustaining the imposition of the 25% delinquency penalty [10] for the year 1943 is without merit. It is undisputed that the return for that year was not filed until April, 1945, more than a year after it was due. The burden was upon the taxpayer to show reasonable cause for failing to file the return timely. He offered no evidence to sustain this burden. Under these circumstances, the imposition of the penalty was mandatory, and therefore the failure of the Tax Court to make specific findings of fact with respect to this issue did not prejudice the taxpayer in any way. Cedarburg Canning Co. v. Commissioner, 7 Cir., 149 F.2d 526, 528.

The judgment of the Tax Court is Affirmed.