Mauricio MICKAM, et al., Plaintiffs,

v.

JOSEPH LOUIS PALACE TRUST,
et al., Defendants.

No. 92–77324.

United States District Court,
E.D. Michigan, S.D.

Dec. 8, 1993.

Order Granting in Part and Denying
in Part Reconsideration Jan. 4, 1994.

Opinion Denying Reconsideration
March 1, 1994.

Michael D. Finn, Farmington Hills, MI, for plaintiffs.

Paul Valentino, Bloomfield Hills, MI, for Joseph L. Palace Trust, Victoria and Paul Palace.

Andrew Munro, Troy, MI, for Philip Seaver Title Co.

Marci McIvor, Detroit, MI, for Mich. Dept. of Treasury.

John Lindquist, Washington, DC, for U.S.

*OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND GRANTING PHILIP SEAVER TITLE COMPANY'S MOTION FOR SUMMARY JUDGMENT*

EDMUNDS, District Judge.

Plaintiffs, Mauricio and Kathleen Mickam and their company, U–Wash of Pontiac, Inc.,[1] brought suit against Defendants, alleging that they have been damaged as a result of their purchase of property encumbered by outstanding federal and state tax liens. Defendants include: Joseph Louis Palace Trust; Victoria Palace and Paul Palace, Cotrustees of the Trust; Philip R. Seaver Title Company; the United States; and the State of Michigan. Plaintiffs and Seaver Title have filed motions for summary judgment.

### I. Facts

Joseph Louis Palace created the Joseph Louis Palace Trust, a revocable trust, in May of 1984. Joseph Palace was the grantor and trustee, and Victoria Palace and Paul Palace were appointed as successor trustees. After Joseph Palace's death in 1989, Victoria Palace and Paul Palace became cotrustees of the Trust.

In 1989, Paul Palace obtained a title insurance commitment from Seaver Title, for insurance covering the property that is the subject of this lawsuit. Seaver Title, as agent of Security Union Title Insurance Company, issued a commitment dated September 25, 1989, showing the property owners as Mahlon Benson, Jr. and Edward McNamara and indicating that the party to be insured was Paul Palace. This 1989 commitment listed as exceptions unspecified federal and state tax liens that had been filed against "Paul F. Palace/Paul F. Palace

---

1. The Mickams are the sole shareholders of U– Wash.

Jr./Joseph Louis Palace." No title policy was ever issued pursuant to this commitment.

Then, in 1990, U–Wash became interested in acquiring the real estate. U–Wash obtained its own title insurance commitment from Seaver Title. Seaver title issued a commitment dated October 30, 1990, showing the property owners as Mahlon Benson and Joseph L. Palace Trust. The commitment indicated that the party to be insured was U–Wash Pontiac, Inc., and it did not list any federal or state tax liens as exceptions to title.

In 1991, U–Wash purchased the Trust property via a land contract. The land contract, dated February 1, 1991, provided that upon payment in full, the Cotrustees acting on behalf of the Trust would provide a warranty deed to U–Wash. There were no exceptions to title made for any state or federal tax liens. As part of the land contract transaction, the Cotrustees executed a warranty deed to U–Wash. The deed was dated February 1, 1991, and was placed in escrow. The Cotrustees' deed to U–Wash was never delivered out of escrow nor was it ever recorded, because subsequently U–Wash assigned its interest in the land contract to the Mickams.

Pursuant to the second commitment and as part of the land contract transaction, Seaver Title, as agent for Security Union, issued a title policy to U–Wash dated February 4, 1991. The title policy did not list as exceptions any federal or state tax liens on the property.

In October of 1991, the Trust was found to be invalid in a state court condemnation action regarding a portion of the Trust property. There, the federal and state governments claimed that the condemnation proceeds should be paid to them in satisfaction of their liens against the Trust property. The Trust argued that condemnation proceeds should be paid to it because the tax liens had been filed against Joseph Palace, not against the Trust.

The state court held an evidentiary hearing and found that the Trust was not a valid trust for the purpose of avoiding Joseph L. Palace's tax liabilities. *City of Pontiac v. Estate of Joseph H. Palace* No. 89–374045 (Oakland County Cir.Ct. Oct. 1, 1991). There was no evidence of trust documents or registration of the Trust. The court further found that even if some sort of trust existed, the transfer of the property to the Trust was a fraudulent conveyance.

> In light of all the evidence (and lack of evidence) the Court concludes that the transfer of property was a fraudulent conveyance. As such, the conveyance did not extinguish the tax liens and does not preclude Defendants U.S. and State of Michigan from collecting condemnation proceeds.

*Id.*

Subsequently, in May of 1992, the Cotrustees executed and delivered a warranty deed to Mauricio and Kathleen Mickam, as assignees of U–Wash. This deed was recorded, and again, no title exceptions were made for tax liens.

In August of 1992, the Mickams applied for a mortgage on the property. The lender refused to lend them money after conducting a title search and discovering that federal and state tax liens had been filed against the property.[2] As a result, Plaintiffs filed a complaint alleging the following:

2. The federal tax liens filed against the property are as follows:

| Tax Type | Period | Assessmt | Notice | Amt/Notice | 7/5/93 Bal. |
|---|---|---|---|---|---|
| 941 | 6–30–85 | 9–23–85 | 5– 4–88 | 646.87 | 1,541.86 |
| 941 | 5–30–87 | 4– 4–88 | 5– 4–88 | 1,117.93 | 2,083.72 |
| 941 | 9–30–87 | 2–22–88 | 5– 4–88 | 2,188.10 | 4,161.77 |
| 6672 | 9–30–87 | 12–19–88 | 10–10–89 | 21,117.67 | 27,804.05 |
| 1040 | 12–31–88 | 11–12–90 | 5– 8–91 | 8,043.26 | 10,595.54 |
| 1040 | 12–31–89 | 11–19–90 | 5– 8–91 | 2,551.42 | 3,621.19 |

U.S. response to Seaver's motion for summary judgment, p. 3.

It is not clear exactly which state tax liens are at issue here. The Plaintiffs allege that the state tax liens were imposed against any interest in the

1. Breach of contract against the Trust and the Cotrustees
2. Negligent misrepresentation and breach of insurance contract against Seaver Title [3]
3. Quiet title against the United States requesting that the federal tax liens be discharged
4. Quiet title against the State of Michigan requesting that the state tax liens be discharged
5. Fraud and misrepresentation against the Trust and the Cotrustees

Plaintiffs filed a motion for summary judgment on all of their claims.

As a result of this lawsuit, the Trust and the Cotrustees filed a cross complaint against Seaver Title alleging breach of insurance contract, breach of warranty, and indemnity. Seaver Title has filed a motion for summary judgment on the complaint and on the cross complaint.

## II. Analysis

### A. Plaintiffs' claims against the Trust and the Cotrustees

Plaintiffs contend that the Trust and the Cotrustees are liable for breach of contract and fraud because they warranted that the property was free of encumbrances when they transferred the property to U–Wash by land contract and then to the Mickams by warranty deed. In an action for breach of contract for sale of land, Plaintiffs can recover the price paid for the land plus interest. *Dubay v. Kelly,* 137 Mich. 345, 100 N.W. 677 (1904). In an action for fraud, Plaintiffs can recover the actual value of the interest in the land which was lost. *Id.*

That is, Michigan courts have approved of the "English Rule" which provides that a buyer may recover benefit of the bargain damages from a seller who sold realty in bad faith by concealing known title defects. Such damages are the difference in value between the contract price and the value of the property as encumbered. *Soloman v. Western Hills Development Co.,* 110 Mich.App. 257, 312 N.W.2d 428, 433 (1981).

The Trust and the Cotrustees contend that they are not liable to Plaintiffs because they believed that the property was unencumbered, in reliance on the title commitment. The issue of bad faith is a fact question relevant to Plaintiffs' fraud claim, and thus summary judgment is denied on the fraud claim against the Trust. However, bad faith is not an element to a breach of contract action. As the Trust and the Cotrustees did not assert any other defenses to Plaintiffs' breach of contract claim, summary judgment is hereby granted to Plaintiffs on their breach of contract claim.

### B. Claims against Seaver Title

#### 1. Breach of Insurance Contract

Plaintiffs claim that Seaver Title is liable to them under the insurance policy. This claim is meritless, because Seaver Title is not the insurer under the policy; Seaver Title merely acted as an agent for Security Union. While an agent is liable for his own torts, an agent is not liable for the contracts it makes on behalf of a disclosed principle. *Hall v. Encyclopedia Britannica, Inc.,* 325 Mich. 35, 37 N.W.2d 702 (1949); *Huizenga v. Withey Sheppard Assoc.,* 15 Mich.App. 628, 167 N.W.2d 120 (1969).[4]

---

property held by Joseph Louis, Joseph Louis Palace, Julie Palace, Estate of Joseph L. Palace, Joseph Louis Palace Trust, and Victoria Palace. They contend that two liens were filed in 1989, prior to Plaintiff's purchase of the property, and that two were filed in 1992, after Plaintiffs purchased the property. Plaintiffs' brief in support of motion for summary judgment, p. 4. In contrast, the State of Michigan indicates that only two liens are at issue, one filed in 1988 and one filed in 1989. "The state tax liens encumbering the property purchased by Plaintiffs ... are lien number 1006867 in the amount of $12,717.12 recorded on December 1, 1989, and lien number 474914 in the amount of $7,962.55 recorded on

August 25, 1988." State's brief in response to Seaver's motion for summary judgment, pp. 1–2.

3. While Count II of Plaintiffs' complaint is titled "Breach of Insurance Contract," the parties have treated the claim as one for negligent misrepresentation as well.

4. Further, only U–Wash is an insured under the policy; thus, the Mickams have no claim for breach of insurance contract. *See, e.g., Kirkland v. American Title Ins. Co.,* 692 F.Supp. 153 (E.D.N.Y.1988) (title insurer only liable to one with whom it has privity of contract); *Ortego v.*

Accordingly, Seaver's motion for summary judgment on Plaintiffs' claim for breach of contract is granted and Plaintiffs' cross motion on this claim is denied.

### 2. Negligent Misrepresentation

U–Wash, the Mickams, the Trust and the Cotrustees contend that Seaver Title negligently performed the title search and should be liable to them for money damages in the amount of the difference between the price and the value of the encumbered land.

#### a. Seaver's Liability to U–Wash

■ Michigan law recognizes the tort of negligent misrepresentation. In *Williams v. Polgar*, 391 Mich. 6, 215 N.W.2d 149 (1974), the Michigan Supreme Court discussed the tort in the context of misrepresentations allegedly made by a title abstracter. The tort of negligent misrepresentation is a hybrid claim encompassing elements of negligence[5] and misrepresentation.[6] While no Michigan court has expressly outlined the elements of a negligent misrepresentation claim, the elements can be summarized as follows:

1. the defendant made a material misrepresentation;

2. the representation was false;

3. the defendant was negligent in making the misrepresentation, i.e., the defendant breached a business or professional duty of care to provide accurate information to those who employ him;

5. the plaintiff suffered damages as a result.

*See Williams*, 391 Mich. 6, 215 N.W.2d 149. The *Williams* court held that an abstracter who negligently performs a title search is liable to a foreseeable class of potentially injured persons. *Id.* However, no Michigan court has held that a title insurer or agent has a professional duty of care to those who employ them, outside of their contractual obligations.

■ Courts in other jurisdictions are split on whether or not a title insurer or agent can be liable in negligence like an abstracter. *Compare Banville v. Schmidt*, 37 Cal.App.3d 92, 112 Cal.Rptr. 126 (1974) (title insurer may be liable in negligence for failure to conduct title search with reasonable care) *with Anderson v. The Title Ins. Co.*, 103 Idaho 875, 655 P.2d 82 (1982) (title insurer and agent are liable under policy only, not in negligence; refusing to follow *Banville*). In *Anderson*, it was noted that parties in Idaho generally buy title insurance and rely on the insurance rather than on an abstract. The purchaser paid a fee to the title insurance company for title insurance, not for the mere examination of title. In contrast in *Banville*, the court found that the fee paid was in part for a title search and examination. Thus, the title insurer had acted like an abstracter and could be liable in negligence.

The Court finds *Anderson* more persuasive. As in other states, parties in Michigan generally purchase title insurance, rather than relying on an abstract, because they prefer the certainty of insurance. In purchasing insurance, a buyer acquires a contractual right against the insurer for coverage of title defects. In purchasing an abstract, a buyer merely obtains an examination of title. With an abstract, a real estate buyer can obtain damages for title defects

---

*First American Title Ins. Co.*, 569 So.2d 101 (La.App.1990) (title insurance policy issued to mortgagee conferred no benefits on mortgagor; mortgagor could have purchased owner's policy, but did not); *Hooper v. Commonwealth Land Title Ins. Co.*, 285 Pa.Super. 265, 427 A.2d 215 (1981) (title insurer only liable to insured, not third parties).

Seaver also contends that it is not liable to U–Wash under the policy because of three listed exceptions. However, it is not necessary to reach this issue.

**5.** Negligence has four elements: duty, breach of duty, causation, and damages.

**6.** The elements of a fraud claim are: 1) the defendant made a material misrepresentation; 2) the representation was false; 3) defendant knew the representation was false when it was made or made it recklessly, without knowledge of its truth as a positive assertion; 4) the representation was made with the intent to induce reliance; 5) plaintiff in fact reasonably relied on the misrepresentation; and 6) the misrepresentation caused plaintiff to suffer damages. *Candler v. Heigho*, 208 Mich. 115, 121, 175 N.W. 141 (1919), *overruled on other grounds*, *U.S. Fidelity & Guar. Co. v. Black*, 412 Mich. 99, 116 n. 8, 313 N.W.2d 77 (1981).

only through tort litigation. To protect the rights and expectations of the parties, a title insurer should be liable in accordance with the terms of the title policy only and should not be liable in tort. To hold otherwise does violence to the whole concept of insurance.[7] Accordingly, U–Wash's motion for summary judgment against Seaver Title is denied and Seaver Title's cross motion against U–Wash is granted.

### b. Seaver's Liability to the Mickams, the Trust, and the Cotrustees

▮ Pursuant to the holding in *Williams*, an abstracter may be liable for negligent misrepresentation to third parties as well. *Williams*, 391 Mich. 6, 215 N.W.2d 149. However, no Michigan court has addressed whether a title agent or title insurer may be liable to a third party.[8] Having refused to find that a title insurer or agent has the same duty as an abstractor to those with whom it enters into a contract, this Court also refuses to extend this duty to third parties. A title insurer or agent is not liable in tort to third parties. A party who desires insurance coverage for title defects can obtain it by merely purchasing a policy. Thus, the Mickam's motion for summary judgment against Seaver Title is denied, and Seaver Title's motion for summary judgment against the Mickams, the Trust, and the Cotrustees is granted.

### C. The Claim that the Liens are not a Cloud on Title

In defense to Plaintiffs' motion for summary judgment, Seaver Title, the Trust, and the Cotrustees also claim that the tax liens do not encumber the property. Seaver Title claims that it is not liable to Plaintiffs because the tax liens are not a cloud on the title to the property. The tax liens were not asserted against the insured (U–Wash) or the seller (the Trust), but were asserted against Joseph Louis Palace. The Trust and the Cotrustees similarly claim that they are not liable to Plaintiffs because the tax liens were filed against Joseph Louis Palace after the formation of the Trust in 1984, and thus, they argue that the liens did not attach to the property transferred to the Trust. Further, the Trust and the Cotrustees contend that the Trust is valid and that the Cotrustees are not liable for the debts of a valid trust. All of these allegations are invalid; the tax liens are a cloud on the title, the Trust is invalid to avoid these tax liabilities, and the Cotrustees may be personally liable for the debts of the Trust.

#### 1. Validity of the Trust

▮ The Trust and the Cotrustees are collaterally estopped from raising the issue of validity of the Trust. *Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595 (6th Cir.1982) (collateral estoppel prevents relitigation of factual matters that were fully considered and decided in prior proceeding). The Trust validity was already litigated in state court in a condemnation action regarding the property. After an evidentiary hearing the court found that the Trust was invalid to avoid Joseph Louis Palace's tax liabilities, and even if some sort of trust existed, Joseph L. Palace's transfer of the real estate to the Trust was a fraudulent conveyance. *City of Pontiac v. Estate of Joseph H. Palace*, No. 89–374045 (Oakland County Circuit Ct. Oct. 1, 1991).

Thus, the issue of the validity of the Trust was already litigated and necessarily decided. Because the Trust was not valid for the purpose of avoiding Joseph L. Palace's tax liabilities, the tax liens properly attached to the property. Further, because the Trust is

---

7. Note that while a title agent is not liable to the insured under the policy and is not liable to the insured in tort, the agent may be liable in contract or tort to the insurance company that employs him.

8. While they have not reached the precise issue at hand here, two panels of the Michigan Court of Appeals have held that title agents and insurers do not have a legal duty to foreseeable third parties where the third parties have not shown that they relied on the insurance policy. *Bonner*

v. *Chicago Title Ins. Co.*, 194 Mich.App. 462, 487 N.W.2d 807 (1992), *leave to appeal denied*, 442 Mich. 909, 503 N.W.2d 445 (1993); *Northern Abstract and Title Co. v. Estate of Joan Valley*, No. 144014 (Mich.App. August 26, 1993).

Also, it should be noted that in discussing liability under title insurance policies, courts in other jurisdictions have implied that a title insurer cannot be liable to a third party in tort. *See* cases cited in footnote 4.

invalid, the Cotrustees may be personally liable.

## 2. Attachment of Liens to the Property

■ Seaver argues in the alternative that if the Trust is invalid, the tax liens do not attach to trust property until judgment is entered for the governmental entities. Thus, the liens would not have attached to the property because it has already been transferred. This argument is meritless for a number of reasons. First, a federal tax lien attaches upon assessment, notice, and demand. 26 U.S.C. §§ 6321–6322; *United States v. National Bank of Commerce*, 472 U.S. 713, 720–21, 105 S.Ct. 2919, 2924–25, 86 L.Ed.2d 565 (1985). Second, the Trust was a revocable trust. Under Michigan law, a revocable trust is not a separate legal entity with regard to the rights of creditors. Mich. Comp. Laws Ann. § 556.128. *See United States v. Peelle*, 159 F.Supp. 45 (E.D.N.Y. 1958) (construing similar New York statute). Finally, the property was subject to attachment because conveyance to the Trust was a fraudulent conveyance.

In sum, the Trust was invalid. The liens properly attached to the trust property and became a cloud on title as it passed from the Cotrustees to the Mickams.

## D. Plaintiffs' claim against the United States and the State of Michigan

Plaintiffs contend that the United States has waived sovereign immunity to permit a quiet title suit against it pursuant to 28 U.S.C. § 2409a. However, § 2409a does not apply to cases where the United States claims a security interest in property. The applicable statute is 28 U.S.C. § 2410. Section 2410(b) requires that a claim under the statute must be plead with particularity. Plaintiffs have failed to do so. Within 10 days from the date of this order, Plaintiffs must amend their complaint to properly plead their claim for quiet title against the United States.

9. There appears to be a fact issue whether Plaintiffs had actual notice. The United States claims that Plaintiffs should have been aware of the federal liens because the City of Pontiac filed a

■ Plaintiffs also claim that the United States should be required to extinguish the liens because payments are being made. This argument is meritless, as a secured party is entitled to hold a lien on property serving as security until the debt is paid in full. These debts have not been paid in full.

Plaintiffs also claim, without authority or much explanation, that the federal government cannot maintain the lien while payments are being made because this violates due process and is arbitrary and capricious. The federal government notes that it has valid liens that have attached to the property. While the director of the IRS may discharge the liens, this is discretionary. § 6325(b)(1) of the Internal Revenue Code.

■ Plaintiffs finally argue that they are good faith purchasers without notice for value. While a federal tax lien is ineffective until notice has been filed, 26 U.S.C. § 6323(h)(6), when Plaintiffs purchased the property the tax liens had already been filed. Thus, they had constructive notice.[9]

■ Plaintiffs also argue that the state liens should be discharged. However, this Court has no jurisdiction to enjoin enforcement of state tax liens. 28 U.S.C. § 1341; *Dawson v. Childs*, 665 F.2d 705 (5th Cir. 1982).

Accordingly, Plaintiff's motion for summary judgment is denied regarding Plaintiffs' claims against the United States and the State of Michigan. There are issues of fact, including issues regarding whether the Plaintiffs had notice of the liens and whether the Plaintiffs have priority over the claims of the United States and the State of Michigan.

## III. Conclusion

For the reasons set forth above, the Court hereby orders as follows:

Plaintiffs' motion for summary judgment is GRANTED on their breach of contract claim, that is, (1) in favor of the Mickams against the Cotrustees personally on the warranty deed and (2) in favor of U–Wash

condemnation action for ten feet of frontage on Walton road and the federal government filed a claim for the tax liens against the condemnation award.

against the Cotrustees personally on the land contract.

Plaintiffs' motion for summary judgment is DENIED on the issue of fraudulent misrepresentation against the Trust and the Cotrustees. Plaintiffs' motion for summary judgment against Seaver Title is hereby DENIED.

Seaver Title's motion for summary judgment is GRANTED. Accordingly, Seaver Title Insurance Company is hereby DISMISSED from this case.

With regard to Plaintiffs' claims against the United States, within 10 days from the date of this order, Plaintiffs must file an amended complaint to properly plead their claim for quiet title against the United States. Further, Plaintiffs' motion for summary judgment against the United States and the State of Michigan is DENIED.

March 26, 1993, Seaver Title filed a motion to disqualify attorney for Plaintiffs Michael Finn and attorney for the Cotrustees Paul Valentino, claiming essentially that the attorneys had knowledge of the tax liens and Seaver intends to call them as witnesses at the trial. At the time this was heard, the Court held its decision in abeyance until after summary judgment was decided. In light of the dismissal of Seaver Title from this action, this motion is rendered MOOT.

### ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR RECONSIDERATION, REQUIRING BRIEFING, AND CLARIFYING DECEMBER 8, 1993 SUMMARY JUDGMENT ORDER

Jan. 4, 1994.

This matter has come before the Court upon a motion for reconsideration filed by the Joseph Louis Palace Trust and Cotrustees Victoria Palace and Paul Palace. On December 8, 1993, the Court entered an opinion and order granting in part and denying in part Plaintiffs' motion for summary judgment and granting Philip Seaver Title Company's motion for summary judgment. The Trust and Cotrustees now request that the Court reconsider its order.

█ Pursuant to Rule 7.1(h) of the Local Rules for the Eastern District of Michigan, a motion for reconsideration should be granted if the movant demonstrates that the court and the parties have been misled by a palpable defect and that a different disposition of the case must result from a correction of such palpable defect. A motion that merely presents the same issues already ruled upon by the court shall not be granted. The Trust and Cotrustees' motion for reconsideration makes the same arguments previously advanced to the Court, with the exception of the argument regarding whether or not the Cotrustees should be held personally liable to U–Wash for breach of the land contract and personally liable to the Mickams for breach of a warranty deed.

█ The Trust and Cotrustees argue that the Court erred in holding that Philip Seaver Title Insurance Company was not liable to them. Essentially, they argue that because they paid for the title insurance commitment issued to U–Wash, they had a contract with Seaver Title and thus that Seaver Title is liable to them for breach of contract, breach of warranty, and indemnity. The Trust and the Cotrustees made this same argument in their earlier briefs, and the Court rejected their reasoning. To clarify its prior ruling, just as Seaver Title is not liable to the Mickams under the title policy, Seaver Title is not liable to the Trust and the Cotrustees.

> Seaver Title is not the insurer under the policy; Seaver Title merely acted as an agent for Security Union. While an agent is liable for his own torts, an agent is not liable for the contracts it makes on behalf of a disclosed principle.

See December 8, 1993 Opinion and Order, pp. 520–521 (citations omitted).[1] Thus, there was no insurance contract between Seaver Title and the Trust and Cotrustees; Seaver Title is not liable to the Trust and the Cotrustees for breach of contract, breach of warranty, or indemnity.

---

1. Further, the insured under the policy was U–Wash, not the Trust and the Cotrustees. Even though the Trust and Cotrustees may have paid for the title commitment as part of their transaction with U–Wash does not give rise to a title insurance contract between Seaver Title and the Trust and Cotrustees.

Accordingly, the motion for reconsideration is hereby DENIED on all grounds except the issue of the Cotrustees' personal liability. With regard to that issue, Plaintiffs U–Wash and the Mickams shall submit a response brief not to exceed 10 pages on or before January 14, 1994. The Cotrustees may submit a reply brief not to exceed 5 pages on or before January 21, 1994.[2] Further, the December 8, 1993 opinion and order is CLARIFIED as set forth above.

Dated: Jan. 4, 1994

## OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION; GRANTING PLAINTIFFS' MOTION TO AMEND TO ADD VICTORIA PALACE AND PAUL PALACE PERSONALLY, ESTATE OF JOSEPH L. PALACE, AND SECURITY UNION AS DEFENDANTS; AND DENYING MOTION OF TRUST, VICTORIA PALACE, AND PAUL PALACE TO ADD SECURITY UNION AS DEFENDANT TO THIRD PARTY COMPLAINT

### March 1, 1994.

This matter came before the court on the motion of the Joseph Louis Palace Trust and Cotrustees Victoria Palace and Paul Palace for reconsideration of the court's December 8, 1993 order granting in part and denying in part Plaintiffs' motion for summary judgment. Also before the court are Plaintiffs' motions to add Victoria Palace and Paul Palace personally as defendants, to add the Estate of Joseph L. Palace as a defendant, and to add Security Union as a defendant. Victoria Palace and Paul Palace also moved to add Security Union as a defendant to their third party complaint. The facts are fully laid out in the court's December 8 opinion and order, and they will not be reiterated here.

A. *Motion to reconsider the personal liability of Victoria Palace and Paul Palace and Plaintiffs' motion to amend to add Victoria Palace and Paul Palace personally and to add Estate of Joseph L. Palace*

Having reviewed the parties' pleadings relating to the motion of Victoria and Paul Palace for reconsideration, the court again finds that Victoria Palace and Paul Palace are personally liable to the Mickams on the warranty deed and to U–Wash on the land contract.

■ Victoria and Paul Palace contend that the court erred in finding that they were personally liable, relying on Michigan statute section 700.818(1):

> Unless otherwise provided in the contract, a trustee is not personally liable on contracts properly entered into in his fiduciary capacity in the course of administration of the trust estate unless he fails to reveal his representative capacity and identify the trust estate in the contract.

Mich.Comp. Laws Ann. § 700.818(1). The Palaces claim that because they expressly executed the land contract and the warranty deed on behalf of the trust, they cannot be personally liable. However, although they disclosed the alleged existence of the trust, the trust, in fact, did not exist. As the court noted in its December 8 opinion, a state court already found that the trust was not valid as there was no evidence of trust documents or registration. The state court found that even if some sort of trust existed, the settlor of the trust had fraudulently conveyed the real estate to the trust. *City of Pontiac v. Estate of Joseph H. Palace* No. 89–374045 (Oakland County Cir.Ct. Oct. 1, 1991). As this court previously stated, the Trust and the Cotrustees are collaterally estopped from raising the issue of validity of the Trust. December 8 opinion, p. 522.

Upon failure or termination of a trust, the trust property reverts to the settlor or to his heirs. Mich.Comp. Laws Ann. § 555.17. In this case, the settlor of the trust, Joseph L. Palace, died prior to the date the land contract or the warranty deed was executed. Because the trust failed, the property reverted to the estate of Joseph L. Palace.

Further, because the trust was invalid, Victoria Palace and Paul Palace could not have been acting as cotrustees at the time

---

**2.** This issue was not previously briefed by any of the parties.

they entered into the land contract and warranty deed. They entered into these contracts as ordinary agents of an undisclosed principal. As such, they rendered themselves personally liable on the contracts. *International Union United Automobile Workers of America v. Wood,* 337 Mich. 8, 14, 59 N.W.2d 60 (1953); *Storm v. Eldridge,* 336 Mich. 424, 434, 58 N.W.2d 129 (1953); *Detroit Pure Milk Co. v. Patterson,* 138 Mich. App. 475, 479–80, 360 N.W.2d 221 (1984).

Accordingly, the motion for reconsideration is denied. Further, Plaintiffs' motion to amend their complaint to add Victoria Palace and Paul Palace personally as defendants is granted. Further, Plaintiffs' motion to add the estate of Joseph L. Palace as a defendant is granted.[1]

### B. *Plaintiffs' motion to add Security Union as a defendant*

Plaintiffs also filed a motion to add Security Union Title Insurance Company as a defendant in this case. Originally, Plaintiffs brought suit against Security Union's agent, Philip R. Seaver Title Company. This court held that Seaver Title was not liable on the title policy because it merely acted as an agent for a disclosed principal. December 8 opinion, pp. 520–521. It is possible that Security Union is liable to Plaintiff U–Wash, the insured under the policy. Thus, the complaint may be amended to add a breach of contract claim by U–Wash only against Security Union.[2]

### C. *Motion of Victoria Palace, Paul Palace, and the Trust to add Security Union as a third party defendant*

Victoria Palace, Paul Palace, and the Trust[3] also moved to add Security Union as a defendant to their third party complaint for breach of contract, breach of warranty, and indemnity. Although motions to amend should be freely granted, Fed.R.Civ.P. 15, a motion to amend should be denied if the amendment would be futile. *Foman v.*

*Davis,* 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Marx v. Centran,* 747 F.2d 1536, 1551 (6th Cir.1984), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985).

Here, amendment would be futile. As this court has previously held, the insured under the title policy was U–Wash only. Simply paying the commitment fee as part of their transaction with Plaintiffs did not give Victoria Palace and Paul Palace any contractual rights under the title policy. The Palaces do not have a claim for breach of contract against Security Union. In addition, for the same reasons that the court found Seaver Title was not liable to the Trust and the Palaces in tort, Security Union is not liable to them in tort. See December 8 opinion, p. 522.

### D. *Conclusion*

For the reasons set forth above, the motion for reconsideration is DENIED. Plaintiffs' motions to amend to add Victoria Palace and Paul Palace personally, the Estate of Joseph L. Palace, and Security Union as defendants are GRANTED. The motion of the Trust, Victoria Palace, and Paul Palace to add Security Union as a defendant to the third party complaint is DENIED.

Dated: <u>March 1, 1994</u>

---

1. Victoria and Paul Palace did not object to adding the estate as a defendant.

2. Victoria and Paul Palace also did not object to adding Security Union as a defendant.

3. In light of the state court decision holding the Trust invalid, and this court's opinions rendered December 8 and today, it is questionable whether the Trust is properly a party to this case at all.