NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 07a0027n.06
Filed: January 9, 2007

No. 06-1277

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ERICKSON'S FLOORING & SUPPLY CO., INC., )
)
     Plaintiff-Appellant, )
)
v. )  On Appeal from the United States
)  District Court for the Eastern
TEMBEC, INC., TEMBEC, USA, L.L.C., and )  District of Michigan
KEVIN GURICAN, )
)
     Defendants-Appellees, )
)
ALL TILE, INC., )
)
     Defendant.

Before:     **BOGGS, Chief Judge; COOK, Circuit Judge; and CARR, District Judge.**[*]

     **PER CURIAM.** Erickson's Flooring and Supply Company, Inc., ("Erickson's")

appeals the district court's grant of summary judgment on its three claims against Tembec, Inc. and

Tembec, USA, L.L.C. (together "Tembec"), its one claim against Kevin Gurican, and its three claims

against both Tembec and Gurican. Erickson's also appeals the *sua sponte* decision of the district

court to grant summary judgment on the latter three claims against Gurican. Because we find that

the district court correctly determined that Erickson's failed to present sufficient evidence to create

---

     [*] The Honorable James G. Carr, Chief United States District Judge for the Northern District
of Ohio, sitting by designation.

No. 06-1277
Erickson's Flooring & Supply Co, Inc. v. Tembec, Inc.

a genuine issue of material fact on any of its claims, and that Tembec was entitled to judgment as a matter of law, we affirm the district court's grants of summary judgment.

**I**

Erickson's is a wholesale distributor of hardwood flooring and related supplies. Tembec is a leading integrated forest products company principally involved in the production of wood products, including hardwood flooring. In 1992, Erickson's began distributing Tembec products in Michigan, Indiana, Illinois, and Ohio. Erickson's distribution of Tembec products was governed by an oral agreement between the two companies that Erickson's would be the exclusive distributor for Michigan, Indiana, Ohio, and most of Illinois.

This arrangement continued until 2003, when All Tile, Inc., one of Erickson's competitors, approached Tembec about becoming a distributor. In late August 2003, All Tile and Tembec reached an agreement whereby Tembec would restructure its distribution network to include All Tile. Erickson's states that on August 26, 2003, it received telephone calls from its customers who informed it that All Tile was claiming to be Tembec's new distributor. In response to this news, Erickson's arranged a meeting with Tembec for September 3, 2003.

At that meeting, Tembec effectively terminated its existing distribution agreement with Erickson's. Tembec advised Erickson's that it would have to exit the Illinois market completely by October 24, 2003, and that it would have to accept a dual distributorship arrangement with All Tile in Michigan. All Tile began distributing Tembec products on or about October 24, 2003.

Erickson's also alleges that sometime after the cancellation of the agreement with Tembec, Kevin Gurican, a Tembec employee, contacted one of Erickson's biggest customers and falsely

- 2 -

stated that Erickson's was going out of business and was not able to service its customers. Erickson's further alleges that after Gurican left Tembec in February of 2005 to work for All Tile, he used Erickson's customer lists and information, which he had obtained, partly through deception, while working with Tembec, to solicit Erickson's customers for his own benefit.

## II

We review a district court's grant of summary judgment *de novo*, using the same Rule 56(c) standard as the district court. *Hansard v. Barrett*, 980 F.2d 1059, 1061 (6th Cir. 1992). Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Meyers v. Columbia/HCA Healthcare Corp.*, 341 F.3d 461, 466 (6th Cir. 2003). In deciding a motion for summary judgment, we must view the factual evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party. *Ibid.*; *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III

The district court granted summary judgment against all seven of Erickson's claims. Erickson's appeals every one of these judgments. We will first address the three claims Erickson's alleges solely against Tembec: (1) breach of contract, (2) detrimental reliance, and (3) fraud. We will then address the claim Erickson's alleges solely against Gurican: (4) defamation and business libel. Finally, we will address the claims Erickson's alleges against both Tembec and Gurican: (5) unjust enrichment, (6) tortious interference with contracts and/or business expectancies, and (7)

unfair competition. Ancillary to our discussion of these last three claims, we will address (8) Erickson's argument that the district court improperly granted summary judgment *sua sponte* against these three claims as they pertain to Gurican.

### 1. Breach of Contract

Erickson's contends that its agreement with Tembec was an oral contract that made it Tembec's exclusive distributor. Erickson's also argues that this contract was terminable only for just cause or, in the alternative, could only be terminated with notice. Therefore, Erickson's concludes that Tembec has breached this contract either by terminating without just cause, or by terminating with insufficient notice.

Under Michigan law, contracts for an indefinite term that do not contain a provision regarding the manner in which the contract may be terminated are terminable at will. *Lichnovsky v. Ziebart Int'l Corp.*, 324 N.W.2d 732, 738-39 (Mich. 1982). Even if a binding oral contract existed, Erickson's has not presented sufficient evidence to create a genuine issue of material fact as to whether the contract was terminable only for just cause or only with notice. The only evidence that Erickson's identifies is two letters from Tembec to Erickson's written in 2000 and 2001. Erickson's points to the language of one letter in which Tembec referred to its "commitment and exclusivity to Erickson's over the years." In the other letter, Tembec apologized for allowing another vendor to sell Tembec products in an Erickson's market, assured Erickson's that their exclusive agreement would "not be breached in the future," and that Tembec would notify Erickson's in advance of any exceptions to its agreement with Erickson's. While these letters may be evidence that there was an exclusive contract between Tembec and Erickson's, they are not evidence that the

contract was terminable only for just cause or only with notice. In neither is there any mention, or implication, of termination only for cause. While the second letter does state that Tembec will provide Erickson's with notice of any exceptions it makes to the exclusivity arrangement, this notice guarantee was premised on the original agreement continuing. It did not purport to set out new requirements for termination of the agreement as a whole.

Erickson's also argues that the contract included an implied covenant of good faith and fair dealing. Even if this is so, Erickson's presents no evidence that Tembec violated this covenant. The implied covenant of good faith and fair dealing does not require termination only for cause, or termination only with advance notice. Yet these are the only actions by Tembec that Erickson's can point to as violating this claimed implied covenant.

## 2. Detrimental Reliance

Erickson's contends that Michigan recognizes an independent cause of action for detrimental reliance. According to Erickson's, it arises "when a person is injured as the result of having done something or having refrained from doing something, on the basis of the material representations of another." *Br. of Appellant* at 22-23. Erickson's finds this particular formulation not in a case that recognizes detrimental reliance as an independent cause of action, but in a case that views detrimental reliance as only one element of a more complex claim, such as fraud. *See Catellane v. Federal Express Corp.*, 1995 U.S. Dist. LEXIS 16932 (E.D. Mich. 1995). The only case Erickson's cites that even alludes to an independent detrimental reliance claim is *H.J. Tucker & Assoc. v. Allied Chucker and Engineering Co.*, 595 N.W.2d 176 (Mich. Ct. App. 1999). In that case, the Michigan Court of Appeals declined to correct the claimed error of the trial court in not granting summary

judgment on a detrimental reliance claim. The court found that: "Even assuming, as defendant argues, that the trial court erred in not granting summary disposition with respect to the detrimental reliance claim because detrimental reliance merely constitutes an element of a misrepresentation claim, as opposed to a separate ground for relief, we conclude that any error was harmless because plaintiff recovered only on its breach of contract claim." *Id.* at 187 n.9. This opinion, standing alone, does not create a cause of action. It professes no opinion at all on whether a claim for detrimental reliance can stand alone. Considering this dearth of evidence, the district court properly found that Michigan does not recognize an independent cause of action for detrimental reliance.

Even if Michigan did recognize the claim that Erickson's describes, Erickson's failed to present sufficient evidence to create a genuine issue of material fact. The material representations that Erickson's claims to have detrimentally relied upon were Tembec's alleged representations that Erickson's would remain the exclusive distributor of Tembec products. As noted in our discussion of Erickson's breach of contract claim, *supra*, Erickson's has produced no evidence of such representations. Therefore, Erickson's claim for detrimental reliance fails.

### 3. Fraud

Erickson's accuses Tembec of perpetrating three distinct types of fraud: intentional fraudulent misrepresentation, negligent fraudulent misrepresentation, and silent fraud.

Under Michigan law, to prove a claim for intentional fraudulent misrepresentation, a plaintiff must show: "(1) that defendant made a material misrepresentation; (2) that the representation was false; (3) when defendant made the representation, defendant knew that it was false, or made it recklessly without knowledge of its truth or falsity; (4) that defendant made it with the intent that

plaintiff would act upon it; (5) that plaintiff acted in reliance upon it; and (6) that plaintiff suffered injury." *Baker v. Arbor Drugs, Inc.*, 544 N.W.2d 727, 732 (Mich. Ct. App. 1996). Under Michigan law, a misrepresentation can also be actionable where it was negligently made, when there was "a business or professional duty of care to provide accurate information." *See Mickam v. Joseph Louis Palace Trust*, 849 F. Supp. 516, 521 (E.D. Mich. 1993) (citing *Williams v. Polgar*, 215 N.W.2d 149 (Mich. 1974)).[1] Finally, when, and only when, a legal duty to disclose information exists, suppressing that information or failing to disclose a material fact constitutes "silent fraud." *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33 (Mich. Ct. App. 1998).

Erickson's intentional and negligent fraud claims rest on the same representations it put forth as the basis for its breach of contract and detrimental reliance claims. Specifically, Erickson's again points to the 2000 and 2001 letters it received from Tembec. From the 2001 letter: "Tembec is dedicated to our original agreements regarding distribution rights in the Indiana market to Erickson's." From the 2000 letter: "[Tembec] product has been shipped to A-American in a manner that has caused Erickson's to question Tembec's commitment to our agreement. . . . [The] Agreement will not be breached in the future. Tembec will notify Erickson [sic] in advance of any exception. . . . Home Depot is not welcome to sell Tembec flooring in Erickson's markets. We look forward to continued growth and mutual success with Erickson's . . . ."

---

[1] Note that detrimental reliance is an element of both intentional and negligent fraud. Considering that Erickson's putative detrimental reliance claim appears to allow recovery for *any* affirmative representation that is detrimentally relied upon, it encompasses both Erickson's intentional and negligent fraud claims. Therefore, as we held above that Erickson's failed to present evidence sufficient to create an issue of fact as to whether Tembec made statements upon which Erickson's detrimentally relied, it necessarily follows that Erickson's intentional and negligent fraud claims will fail as well.

As discussed above, these statements cannot reasonably be construed as representations that the distributorship would continue in perpetuity. Further, as the district court noted, it is unclear how these statements are even misrepresentations. The agreement between Tembec and Erickson's continued at least two years after the 2001 letter was written and three years after the 2000 letter was written. Further, even if we could construe the above as commitments, and accept that they eventually proved to be false, Erickson's has presented no evidence that Tembec knew the statements were false at the time Tembec made them. For all of these reasons, the district court properly granted summary judgment on Erickson's intentional and negligent fraud claims.

Erickson's also argues that Tembec is guilty of silent fraud. Erickson's claims that the statements related above created in Tembec "an obligation to disclose timely to [Erickson's] any changes of heart or any actions Tembec was going to take that were contrary to those earlier promises, assurances, and representations." Specifically, Erickson's argues that Tembec's statement in the 2000 letter that it would notify Erickson's of any exceptions it made to the exclusive distributorship agreement in the future created in Tembec a duty to give Erickson's notice of the termination of the agreement as a whole.

The district court found that there was no support for this broad interpretation of Tembec's statement. We agree. For Erickson's to prevail on its claim of silent fraud, it must present evidence that shows Tembec had a duty to disclose its negotiations with All Tile prior to its disclosure at the September 3, 2006 meeting. First, Tembec's statement in the 2001 letter presupposed the continuing existence of the distributorship agreement. The letter stated that the agreement would not be breached in the future without notice, not that the agreement as a whole could not be terminated

without notice. Second, Tembec did provide Erickson's with advance notice of the agreement's cessation at the September 3, 2003 meeting. At that meeting, Tembec notified Erickson's that it had over a month to conclude its operations in Illinois and accept a dual distributorship agreement in Michigan. All Tile did not begin distributing Tembec products until the end of October 2003. Even if it were reasonable to find that Tembec's comments created in it a duty to notify Erickson's in advance of the termination of their relationship, it would not be reasonable to find that Tembec failed to meet this unspecified obligation with its September 3, 2003 disclosure. Again, we affirm the district court's judgment.

### 4. Defamation and Business Libel

Erickson's alleges that Gurican defamed it by telling at least one Erickson's customer that it was going out of business and could not continue servicing its customers. Under Michigan law, the first element of a defamation claim is a false and defamatory statement concerning a plaintiff. *See Rouch v. Enquirer & News of Battle Creek*, 487 N.W.2d 205, 212 (Mich. 1992). The only evidence that Erickson's presents that such a comment was ever made is an affidavit by the president of Erickson's that "employees reported to him that . . . Gurican contacted personnel at [Erickson's] largest Chicago customer, Coleman Floors, and advised that [Erickson's] was going out of business and would not be able to service its customers." As the district court correctly held, this affidavit relates hearsay, and an affidavit based solely on hearsay is insufficient to create a genuine issue of material fact. *See Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968 (6th Cir. 1991); Fed. R. Civ. P. 56(e). Therefore, the district court properly granted summary judgment on this claim.

### 5. Unjust Enrichment

In Michigan, a claim for unjust enrichment consists of: "(1) receipt of a benefit by the defendant from the plaintiff and (2) an inequity resulting to plaintiff because of the retention of the benefit by the defendant." *Barber v. SMH (US), Inc.*, 509 N.W.2d 791, 796 (Mich. Ct. App. 1993). Under appropriate circumstances, Michigan law allows courts to imply a contract in order to prevent unjust enrichment. *Ibid.* "However, a contract will be implied only if there is no express contract covering the same subject matter." *Ibid.*

Erickson's claims that Tembec was unjustly enriched because it did not equitably compensate Erickson's for its substantial assistance in developing a market in the United States for Tembec products. The district court properly dismissed Erickson's claims against Tembec. The two parties had an express oral contract governing their relationship. This was a bargained-for agreement that governed the compensation to flow between the parties for actions taken pursuant to the agreement. Any recovery allowed in this situation would essentially rewrite the contract. *Ibid.*

Erickson's argues that Gurican was unjustly enriched because he had access to Erickson's customer lists, which he allegedly obtained partly through deception, and used them to call on a large number of Erickson's customers following the termination of the agreement between Erickson's and Tembec, and Gurican's subsequent employment with All Tile. Erickson's sole basis for its claim against Gurican is his deposition testimony. Gurican testified that he had access to lists of certain categories of Erickson's customers (though not all) and that he had traveled with Erickson's sales people on visits to Erickson's customers. He testified that in 2005 he became tired of the travel required by his job with Tembec and accepted an offer from All Tile to join them as "product manager for hard wood floors and laminates." Asked to describe his job responsibilities, he

responded: "Manage inventories; pricing, manage pricing, manage promotional pricing. Travel with sales reps to make sure All Tile's customers are comfortable and familiar with the products, make sure the sales people are trained properly in the product." He testified that he has no direct sales responsibilities and does not work on commission. Erickson's, however, points to Gurican's testimony that he called on "a hundred" of Erickson's customers after joining All Tile. In context, however, this testimony does not support Erickson's unjust enrichment claim:

> Q: When you began working with All Tile, did you call any customers that were former customers of Erickson?
> A: Did I call on them how?
> Q: You say you go out with sales reps and things?
> A: Sure.
> Q: Did you go to any companies that had formerly been clients of Tembec products handled by Erickson [sic]?
> A: Sure.
> Q: What companies are those?
> A: Numerous. I'm sure many of the companies that Erickson's calls upon. All Tile – if you want a list. I'll have to type it out. It will be a thousand different customers. We all call on the same people is the point I'm trying to make.
> Q: I understand. And I do appreciate you've not gone through a thousand customers since January 05. But how many customers in the Chicago market did you contact that were Erickson's former customers?
> . . .
> A: A hundred.

JA 879. Gurican testified that he does not make sales, and that he only works with current All Tile customers. Whether or not a particular customer was also a former Erickson's customer has no relevance to his visits or calls; he visits current All Tile customers. Erickson's has not presented any evidence that can be reasonably interpreted as showing that Gurican has received a benefit from his knowledge of Erickson's customer base, let alone an inequitable benefit. Therefore, we affirm the district court's grant of summary judgment on this claim as well.

#### 6. **Tortious Interference with Contracts and/or Business Expectancies**

Under Michigan law, the elements of tortious interference with contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Health Call of Detroit v. Atrium Home & Health Care Services, Inc.*, 706 N.W.2d 843, 848-49 (Mich. Ct. App. 2005). The elements of tortious interference with a business relationship or expectancy are (1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interfere, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted. *Id.* at 849.

As the district court recognized, both claims require that a plaintiff prove either "the intentional doing of a per se wrongful act or the intentional doing of a lawful act with malice and unjustified in law for the purpose of invading plaintiff's contractual rights or business relationship." *Feldman v. Green*, 360 N.W.2d 881, 886 (Mich. Ct. App. 1984). "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Mino v. Clio School District*, 661 N.W.2d 586, 597-98 (Mich. Ct. App. 2003). Further, "[t]o establish that a lawful act was done with malice and without justification, the plaintiff must demonstrate, with specificity, affirmative acts by they defendant that corroborate the improper motive of the interference." *Id.* at 597.

Erickson's has never identified specific clients with whom either Tembec or Gurican interfered. Nor has Erickson's presented any evidence of contracts with particular customers or

breaches of those contracts. Without such evidence, Erickson's has failed to support its claim for tortious interference with contract against either Tembec or Gurican.

Erickson's also has never presented any evidence that Tembec's termination of the distributorship agreement was either wrongful per se or malicious and unjustified. Indeed, there is no evidence that Erickson's actions were anything other than quintessential business maneuvering. While such maneuvering is inevitably painful for a losing party, it is not actionable. *Id.* at 597-98.

Finally, with regard to Erickson's claim against Gurican for tortious interference with business expectancies, the district court correctly held that Erickson's has not presented "any evidence to establish the third and fourth elements of a *prima facie* case: that his alleged interference with customers actually induced or caused a breach or termination of [Erickson's] business relationships or expectancies, and that [Erickson's] suffered damages as a result." Erickson's has also failed to identify any such evidence in the record upon appeal. Therefore, Erickson's has failed to create a genuine issue of material fact sufficient to survive summary judgment.

### 7. Unfair Competition

Michigan law recognizes a claim for unfair competition:

> Unfair competition ordinarily consists in the simulation by one person, for the purpose of deceiving the public, of the name, symbols, or devices employed by a business rival, or the substitution of the goods or wares of one person for those of another, thus falsely inducing the purchase of his wares and thereby obtaining for himself the benefits properly belonging to this competitor. The rule is generally recognized that no one shall by imitation or unfair device induce the public to believe that the goods he offers for sale are the goods of another, and thereby appropriate to himself the value of the reputation which the other has acquired for his own product or merchandise.

*Peninsular Stove Co. v. Augst*, 285 N.W. 24, 26 (Mich. 1939) (quotations omitted).

As the district court correctly found, no such allegations were made against either Tembec or Gurican in this case. Erickson's argues that it had expended large amounts of resources in building up its own business reputation in the markets in which it sold Tembec products, and that by taking Erickson's Tembec business away and giving it to All Tile, Tembec (and Gurican) appropriated Erickson's business reputation and assigned it to All Tile. However, even if there was evidence to support this theory, it would not state a claim for unfair competition. To do so, Erickson's must also allege and present evidence that Tembec (and Gurican) "induced the public to believe that the goods [Erickson's, or perhaps All Tile] offered for sale are the goods of another." There is no such allegation or evidence to support such an allegation, and therefore the district court correctly granted summary judgment on Erickson's unfair competition claims.

## 8. The *Sua Sponte* Grant of Summary Judgment

In its complaint, the only claim that Erickson's specifically alleged against Gurican was its defamation and business libel claim. Erickson's did, however, allege its claim for unjust enrichment, tortious interference with contracts and/or business expectancies, and unfair competition against all defendants generally.[1] Gurican only moved for summary judgment on the one claim specifically alleged against him. Despite this deficiency of Gurican's motion for summary judgment, the district court chose to grant summary judgment on all claims against Gurican because it found them to be clearly baseless. Erickson's appeals this *sua sponte* grant of summary judgment.

The "clearly established rule in this circuit is that a district court must afford the party against

---

[1] The substance of these claims as they relate to Gurican does not appear in Erickson's complaint; for example, Erickson's argument that Gurican stole customers from Erickson's appears for the first time in Erickson's response to Tembec's motion for summary judgment.

- 14 -

whom *sua sponte* summary judgment is to be entered ten days notice and an adequate opportunity to respond." *Yashon v. Gregory*, 737 F.2d 547, 552 (6th Cir. 1984). A district court's failure to comply with this ten-day notice requirement is subject to review for harmless error. *Harrington v. Vandalia-Butler Board of Education*, 649 F.2d 434,436 (6th Cir. 1981). Any error is harmless if "there has been no prejudice to the opposing party by the court's failure to comply with this . . . rule." *Helwig v. Vencor, Inc.*, 251 F.3d 540, 552 (6th Cir. 2001) (*en banc*).

Erickson's has "not demonstrated that [it] could have produced any additional evidence . . . if ten days notice had been given . . . ." *Hoopes v. Equifax, Inc.*, 611 F.2d 134, 136 (6th Cir. 1979). Erickson's had the opportunity in its complaint, in its response motion to Tembec's motion for summary judgment, and in its briefs before this court to point to any evidence that might create a genuine issue of material fact on its claims against Gurican. It has been entirely unable to do so. *See Harrington*, 649 F.2d at 436 ("[W]hen the non-moving party has had an opportunity to address the court concerning a motion and fails to object to an expedited decision thereon, or when the legal issue has already been fully briefed and no factual dispute exists, that party has not been prejudiced by the court's noncompliance with Rule 56(c)."). Even upon appeal, Erickson's makes no claim that additional evidence would have been forthcoming, merely that it should have been allowed to file further briefing or make an oral argument on these claims.

The district court correctly held that Erickson's has failed to present sufficient evidence to create a genuine issue of material fact with regard to any of these three claims against Gurican. Absent any indication from Erickson's that ten days' notice would have given it time to present additional evidence, we hold that the district court's failure to comply with the ten-day notice

- 15 -

requirement is harmless error.

**IV**

For the reasons set out above, we AFFIRM the district court's grants of summary judgment.